# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| DIATATION LANGHORNE,<br>    Petitioner, | CASE NO. 7:18CV00555 |
| | **MEMORANDUM OPINION** |
| v. | By: Norman K. Moon<br>Senior United States District Judge |
| HAROLD CLARKE,<br>    Respondent. | |

Diatation Langhorne, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Fluvanna County Circuit Court. Langhorne's petition is successive and untimely. Therefore, it will be dismissed.

## I. Background

Diatation Langhorne was convicted by a Fluvanna County Circuit Court of habitual offender status and felony eluding the police. On May 31, 2013, the circuit court entered a final order sentencing Langhorne to seven years in prison. He appealed, but the Court of Appeals of Virginia denied his petition. Thereafter, a three-judge panel affirmed the appellate court's denial. On September 2, 2014, the Supreme Court of Virginia refused review. On April 24, 2015, Langhorne moved to set aside his conviction, but the circuit court denied his motion on August 24, 2015. Langhorne did not appeal. On September 10, 2015, Langhorne filed a "Writ of Error Coram Nobis and Motion to Vacate, Set Aside and Declare Null and Void a Defendant's Judgment and Conviction" in the Fluvanna County Circuit Court. On January 13, 2016, the circuit court denied Langhorne's petition because he had not alleged any clerical error or error in

fact. Langhorne appealed, but on December 15, 2016, the Supreme Court of Virginia affirmed the circuit court.

On January 3, 2017, Langhorne filed a federal habeas petition regarding these convictions. On October 23, 2017, this Court dismissed the petition with prejudice as procedurally barred, and denied a certificate of appealability. *See generally*, *Langhorne v. Warden*, No. 7:17CV00071, 2017 WL 4783295 (W.D. Va. Oct. 23, 2017).

On October 15, 2018, Langhorne filed the current petition, attacking only his habitual offender conviction. Langhorne alleges a miscarriage of justice and asserts two claims:

(1) "Counsel failed/refused to raise a meritorious defense to the charge of Habitual Offender on the grounds that Langhorne has never been adjudicated a Habitual Offender by a court of law, as required by due process of law"; and

(2) "Counsel refused/failed to object, and move the court for a mistrial, on the grounds that the Commonwealth Attorney falsely testified to the jury and court about facts and evidence not in the record."

Pet. 6, 7.

## II.  Successive Petition

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) strictly limits the consideration of second or successive habeas petitions. *See In re Williams*, 444 F.3d 233, 235 (4th Cir. 2006), *abrogated on other grounds by In re Gray*, 850 F.3d 139 (4th Cir. 2017). Generally, the court must dismiss with prejudice any second or successive claims previously adjudicated on the merits. 28 U.S.C. § 2244(b); *see also Villanueva v. United States*, 346 F.3d 55, 60 (2d Cir. 2003). Additionally, a petitioner cannot bring "new" claims in a second or successive petition unless the applicant receives permission from the appropriate court of appeals

by showing that (1) the claim relies on a new, previously unavailable, and retroactively applied rule of constitutional or federal law, or (2) if the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and the facts underlying the claim, if proven, would sufficiently establish by clear and convincing evidence that no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2244(b).

However, "not every numerically second petition is a 'second or successive' petition within the meaning of the AEDPA." *In re Williams*, 444 F.3d at 235. A petition is not considered successive if: (1) it is first dismissed without prejudice on technical grounds, such as failure to exhaust state remedies, (2) a claim was not ripe at the time of the first petition, such as when a judgment intervenes between the two habeas petitions and the new application challenges the new judgment, or when a petitioner seeks to file a *Ford v. Wainwright*, 477 U.S. 399 (1986) mental incompetency claim, or (3) when a prisoner uses a motion pursuant to 28 U.S.C. § 2255 or § 2254 to regain a right to appeal. *See, e.g.*, *In re Williams*, 444 F.3d at 235 (discussing technical grounds); *In re Gray*, 850 F.3d at 142 (discussing new petition for intervening judgment); *Panetti v. Quarterman*, 551 U.S. 930 (2007) (discussing *Ford* motions for incompetence); *In re Goddard*, 170 F.3d 435, 438 (4th Cir. 1999) (discussing petitioner seeking to regain a right to appeal under § 2255); *Evans v. Smith*, 220 F.3d 306, 323-25 (4th Cir. 2000) (exhaustive review of all exceptions).

Langhorne previously filed a § 2254 petition, and this Court dismissed that petition with prejudice and denied a certificate of appealability. Langhorne's current petition does not satisfy any of the exceptions to the successive petition bar, and he has not received authorization from

the Fourth Circuit Court of Appeals to file a second federal habeas petition as required by 28 U.S.C. § 2244(b). Therefore, Langhorne's petition is procedurally barred as successive.

### III. Statute of Limitations

Under the Anti-terrorism Effective Death Penalty Act (AEDPA), a one-year period of limitation for federal habeas corpus runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A petitioner can "toll" the federal habeas statute of limitation in two ways: statutory tolling and equitable tolling. Section 2244(d)(2) tolls the federal limitation period during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." Meanwhile, equitable tolling occurs only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).

Langhorne's state proceedings concluded when the Supreme Court of Virginia denied his appeal regarding the writ of coram nobis on December 15, 2016. Assuming Langhorne's state appeals tolled the statute of limitations under 28 U.S.C. § 2244(d)(2), his conviction became final on March 15, 2017, when the ninety day period for filing a petition for writ of *certiorari* with the Supreme Court of the United States expired. *See* Sup. Ct. R. 13; *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Langhorne had one year, or until March 15, 2018, to file a § 2254

petition. He did not file the current petition until October 29, 2018, and he has not asserted any basis for equitable tolling.[1] Therefore, the petition is time-barred.

### IV. Actual Innocence Gateway

Langhorne asserts that he is entitled to federal review because he has demonstrated a fundamental miscarriage of justice.[2]

"Generally, a federal court may not consider claims that a petitioner failed to raise at the time and in the manner required under state law." *Teleguz v. Zook*, 806 F.3d 803, 807 (4th Cir. 2015). However, "[an] exception is made for cases in which a compelling showing of actual innocence enables a federal court to consider the merits of a petitioner's otherwise defaulted claims." *Id.* at 807; s*ee Schlup v. Delo*, 513 U.S. 298, 316 (1995) (excusing procedural default); *McQuiggin v. Perkins*, 569 U.S. 383 (2013) (excusing time-bar). For a petitioner to claim actual innocence, "[new] evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Schlup*, 513 U.S. at 316.

At the threshold, "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Id.* at 322. To state such a claim, the petitioner must satisfy a "rigorous" burden by "support[ing] his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

---

[1] Langhorne's prior § 2254 petition does not toll the statute of limitations. *See* 28 U.S.C. § 2244(d)(2).

[2] Langhorne also appears to argue cause and prejudice. However, I will not address his arguments because cause and prejudice do not excuse the federal time-bar. *See Madueno v. United States*, No. 1:08cv472, 2008 WL 5429656, at *2 (M.D.N.C. Dec. 30, 2008) ("Procedural default is a separate concept from AEDPA's timing provisions. The time-bar is not a procedural default [that] can be excused through a cause and prejudice analysis.").

5

critical physical evidence—that was not presented at trial."[3] *Schlup*, 513 U.S. at 324. Further, "[h]aving been convicted . . . [petitioner] no longer has the benefit of the presumption of innocence. To the contrary, [petitioner] comes before the habeas court with a strong—and in the vast majority of the cases conclusive—presumption of guilt." *Id.* at 326 n.42.

V.    Analysis

Langhorne has not proffered new reliable evidence that would entitle his defaulted and time-barred claims to receive federal habeas review. At the threshold, Langhorne does not present a separate, cohesive argument for a fundamental miscarriage of justice. Additionally, Langhorne would not succeed even where his entire petition was analyzed together as an actual innocence allegation. He argues legal insufficiency—that counsel failed to raise a meritorious defense and/or failed to object to false testimony, and actual innocence requires factual innocence, not legal insufficiency.[4] *See Bousley*, 523 U.S. at 623. Regardless, none of his

---

[3] Importantly, the seminal "actual innocence" cases relied on compelling evidence of actual innocence. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (holding that "'actual innocence' means factual innocence, not mere legal insufficiency."). In *Schlup*, a prison surveillance video showed the petitioner in the dining hall sixty-five seconds before guards responded to the murder he was charged with. The petitioner included affidavits that (1) professed the petitioner's innocence, (2) identified another inmate as the assailant, (3) stated that the petitioner could not have traveled from the dining hall to the murder scene in the known elapsed time, and (4) revealed that the petitioner had been unhurried, certainly not as if he was rushing away from a murder scene. *Schlup*, 513 U.S. at 335-40. In *House v. Bell*, the petitioner presented testimony that the victim's husband had admitted to several people that he had murdered his wife, and also called into question the prosecution's central forensic proof. 547 U.S. 518, 554 (2006) (holding that "the issue [was] close.").

[4] Regardless, his arguments are absurd. For Issue One, he alleges that counsel was ineffective for failing to raise a due process "notice" argument. From 1994 to 2011, Langhorne was arrested nine times for driving without a license. According to Langhorne, he was convicted *three times* for a "first offense" under Va. Code § 46.2-301 *in 1997 alone*. Pet. 4-5. Additionally, two "habitual offender" charges under Va. Code § 46.2-357 were *nolle prossed* in 1998. Pet. 5. In October of 2007, Langhorne was arrested as an habitual offender, but the charge was reduced to a misdemeanor. Pet. 5. Two weeks later, he was arrested again and charged again as an habitual offender. Pet. 5. He was eventually convicted of habitual offending

6

allegations constitute new or compelling evidence, and he has not received authorization from the Fourth Circuit Court of Appeals. *See McQuiggin*, 569 U.S. at 393; 28 U.S.C. § 2244(b); *see also Langhorne v. Warden*, No. 7:17CV00071, 2017 WL 4783295, at *3.

## VI. Conclusion

For the reasons stated, I **GRANT** the motion to dismiss. Langhorne's petition is procedurally defaulted and time-barred. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Langhorne. Further, concluding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

**ENTER:** This __21st__ day of November, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

in 2008. Pet. 5. He now seeks to attack his 2011 habitual offender conviction for lack of notice under due process. Presumably, Langhorne received notice that he was an habitual offender by at least 2008, when he was convicted of being an habitual offender.

For Issue 2, Langhorne asserts that counsel was ineffective for failing to object or move for a mistrial after the Commonwealth's Attorney "falsely testified" when he stated that Langhorne had been declared an habitual offender. Pet. 8. The Commonwealth's statement was neither false nor testimony.

7